

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------X

BRENT BAYNON,

      Plaintiff,

   -against-

WENNER MEDIA, INC. and JANE
WENNER, AMY BURAK, TIM
WALSH, and FRANCINE CAHILL,
(Sued in their Individual and
Official Capacities pursuant to
N.Y. Executive Law §§ 290 et seq.),

      Defendants.

------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N.Y

★ MAR 1 4 2011 ★

LONG ISLAND OFFICE

CV:

**COMPLAINT**

**JURY TRIAL DEMANDED**

SPATT, J.

CV 11 1181

LINDSAY, M.

Plaintiff, BRENT BAYNON, by his attorneys SCOTT MICHAEL MISHKIN, P.C.,

complaining of the Defendants, alleges as follows:

<u>PRELIMINARY STATEMENT</u>

  This case is brought under the Fair Labor Standards Act of 1938 (hereinafter referred to

as "FLSA") as amended, 29 U.S.C. §§ 201, *et seq.* and New York State Labor Law §§ 190, *et*

*seq.* (hereinafter referred to as "NYLL"), for defendants' willful failure to pay plaintiff's earned

wages for overtime work, as required by law; and New York State Human Rights Law, New

York State Executive Law ("NYEL") §§ 296 *et seq.*, due to defendant Wenner Media's,

defendant Jane Wenner's, defendant Amy Burak's, defendant Tim Walsh's, and defendant

Francine Cahill's (collectively referred to as "defendants"), discriminatory treatment and

wrongful termination of plaintiff based on his disability and for defendants' failure to provide a

reasonable accommodation to plaintiff; pursuant to NYEL §§290 *et seq.*, for defendants'

discrimination against plaintiff due to his age, and for defendants' retaliation against plaintiff for

engaging in protected activity.

JURISDICTION

FIRST:          The jurisdiction of the Court over this controversy is based upon

28 U.S.C. §1331, 1337 and 1343.

SECOND:          In addition, the Court has jurisdiction over plaintiff's claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

THIRD:          The Court also has supplemental jurisdiction pursuant to

28 U.S.C. § 1367(a), over plaintiff's N.Y. Exec. Law §§ 290, *et seq.* and NYLL §§ 190, *et seq.*

claims, as they form part of the same case or controversy.

VENUE

FOURTH:          At the time of the unlawful practices, Plaintiff was a resident of Suffolk

County in the Eastern District of the United States District Court of New York.

FIFTH:          The unlawful practices alleged below were committed in Amagansett,

New York, in the County of Suffolk, in the Eastern District of the United States District Court of

New York.  This Court is thereby proper venue under 28 U.S.C. §1391.

PARTIES

SIXTH:          Plaintiff Brent Baynon ("hereinafter referred to as "Baynon") at all

relevant times, is an adult individual residing in the State of New York, County of Suffolk.

SEVENTH:          Plaintiff has a "disability" as defined in NYEL § 292 (21), in that he is

physically impaired.

EIGHTH:          Plaintiff's date of birth is October 27, 1960, and he is currently Fifty (50)

years old.

NINTH:          During all times relevant to this action, Plaintiff was a member of a

protected class in that he was over the age of forty (40).

2

TENTH:        Plaintiff is an "employee" as defined by the FLSA, NYLL, and NYEL.

ELEVENTH:     Plaintiff, at all times referenced herein and at the time the cause of action arose, was qualified for his position as an Estate Manager at defendants.

TWELFTH:      Defendant Wenner Media (hereinafter referred to as "WM") is a domestic corporation, and has offices located in the State of New York, County of New York.

THIRTEENTH:  At all times relevant to this action, defendant WM assigned plaintiff to work in Amagansett, New York in the County of Suffolk, at the Estate of defendant Jane Wenner.

FOURTEENTH:   At all times relevant to this action, WM was an "employer" as defined by FLSA, NYLL, and NYEL.

FIFTEENTH:   Upon information and belief, at all times relevant to this action, defendant WM employed more than two (2) employees engaged in interstate commerce and had a gross annual dollar volume of sales made or business done of not less than five-hundred thousand dollars ($500,000.00).

SIXTEENTH:  At all times relevant to this action, defendant WM employed employees, who regularly were engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of FLSA §§ 3(b), (g,), (i) and (j).

SEVENTEENTH:     At all times referenced herein and at the time the cause of action arose, defendant Jane Wenner (hereinafter referred to as "Wenner") was and is the owner and operator of defendant WM.

EIGHTEENTH:      At all times relevant to this action, defendant Wenner was an "employer" as defined by FLSA, NYLL, and NYEL.

3

NINETEENTH:        Upon information and belief, at all times relevant to this action, defendant Wenner employed more than two (2) employees engaged in interstate commerce and had a gross annual dollar volume of sales made or business done of not less than five-hundred thousand dollars ($500,000.00).

TWENTIETH:  At all times relevant to this action, defendant Wenner employed employees who regularly were engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of FLSA §§ 3(b), (g,), (i) and (j).

TWENTY-FIRST:        Defendant Wenner possesses an ownership interest in defendant WM, controls significant functions of the business and/or determines employees' salaries.

TWENTY-SECOND:   At all times relevant to this action, defendant Wenner has and had the authority to hire, fire and discipline employees at defendant WM.

TWENTY-THIRD:        At all times relevant to this action, defendant Wenner has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable pursuant to the FLSA for her failure to pay overtime wages and for her discriminatory treatment of plaintiff.

TWENTY-FOURTH:        At all times relevant to this action, defendant Wenner aided, abetted, incited, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL §§290, *et seq.*

TWENTY-FIFTH:        At all times relevant to this action, defendant Wenner actually participated in the conduct giving rise to plaintiff's FLSA claims and discrimination claims and

4

is thereby individually liable for her failure to pay overtime wages pursuant to the FLSA and for her discriminatory conduct against plaintiff.

TWENTY-SIXTH:       Defendant Wenner is named in her official and individual capacity because she knew or should have known that her and the defendants' ongoing willful and malicious actions against plaintiff violated the statutory rights of plaintiff.

TWENTY-SEVENTH: At all times referenced herein and at the time the cause of action arose, defendant Amy Burak (hereinafter referred to as "Burak") was and is employed by WM as its Human Resources Director.

TWENTY-EIGHTH:    Defendant Burak has and had the authority to hire, fire and discipline employees at defendant WM.

TWENTY-NINTH:       Defendant Burak has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment of plaintiff.

THIRTIETH:    At all times relevant to this action, defendant Burak aided, abetted, incited, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL §§ 290, *et seq.*

THIRTY-FIRST:       At all times relevant to this action, defendant Burak actually participated in the conduct giving rise to plaintiff's discrimination claims and is thereby individually liable for her discriminatory conduct against plaintiff.

THIRTY-SECOND:     Defendant Burak is named in her official and individual capacity because she knew or should have known that her and the defendants' ongoing willful and malicious actions against plaintiff violated the statutory rights of plaintiff.

THIRTY-THIRD:       At all times referenced herein and at the time the cause of action arose, defendant Tim Walsh (hereinafter referred to as "Walsh") was and is employed by WM as its Vice President, Tax and Finance department.

THIRTY-FOURTH:       At all times relevant to this action, defendant Walsh has and had the authority to hire, fire and discipline employees at defendant WM.

THIRTY-FIFTH:       At all times relevant to this action, defendant Walsh has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for his discriminatory treatment of plaintiff.

THIRTY-SIXTH:       At all times relevant to this action, defendant Walsh aided, abetted, incited, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL §§ 290, *et seq.*

THIRTY-SEVENTH:   Defendant Walsh actually participated in the conduct giving rise to plaintiff's discrimination claims and is thereby individually liable for his discriminatory conduct against plaintiff.

THIRTY-EIGHTH:       Defendant Walsh is named in his official and individual capacity because he knew or should have known that his and the defendants' ongoing willful and malicious actions against plaintiff violated the statutory rights of plaintiff.

THIRTY-NINTH:       At all times referenced herein and at the time the cause of action arose, defendant Francine Cahill (hereinafter referred to as "Cahill") was and is employed by defendant WM as defendant Wenner's personal assistant and property manager.

FORTIETH:       Defendant Cahill has and had the authority to hire, fire and discipline employees at defendant WM.

6

FORTY-FIRST:        Defendant Cahill has and had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment of plaintiff.

FORTY-SECOND:        At all times relevant to this action, defendant Cahill aided, abetted, incited, compelled, and/or coerced the acts against plaintiff that are forbidden under NYEL §§ 290, *et seq.*

FORTY-THIRD:        At all times relevant to this action, defendant Cahill actually participated in the conduct giving rise to plaintiff's discrimination claims and is thereby individually liable for her discriminatory conduct against plaintiff.

FORTY-FOURTH:        Defendant Cahill is named in her official and individual capacity because she knew or should have known that her and the defendants' ongoing willful and malicious actions against plaintiff violated the statutory rights of plaintiff.

<u>STATEMENT OF FACTS</u>

FORTY-FIFTH:        At all times relevant to this action, plaintiff was employed by defendant Wenner as an Estate manager of defendant Wenner's estate.

FORTY-SIXTH:        During the course of plaintiff's employment, defendants controlled the entire manner and means by which the plaintiff completed his employment duties.

FORTY-SEVENTH:        During the course of plaintiff's employment, defendants controlled the location where plaintiff worked by mandating that plaintiff work daily at defendant Wenner's Estate in Amagansett, New York.

FORTY-EIGHTH:        During the course of Plaintiff's employment as an Estate Manager of defendant Wenner's Estate, defendants controlled the sources of the instrumentalities and tools that plaintiff used to conduct his daily employment duties.

FORTY-NINTH:        As an employee of defendant WM, the defendants retained the right and discretion to assign additional responsibilities and projects to plaintiff.

FIFTIETH:        As an employee of defendant WM, plaintiff reported to his desk on a daily basis at defendant Wenner's Estate to conduct his employment duties for the defendants.

FIFTY-FIRST:  During the course of plaintiff's employment as an Estate Manager with defendants, plaintiff held himself out to be, and was in fact an employee of defendant WM.

FIFTY-SECOND:        During the course of plaintiff's employment, plaintiff's employment duties consisted of managing the Estate of defendant Wenner, the co-owner of defendant WM.

FIFTY-THIRD: During the course of plaintiff's employment at defendants, plaintiff received a pay check twice a month from defendant WM, for the services he performed at defendant Wenner's estate.

FIFTY-FOURTH:        As the Estate Manager of defendant Wenner's estate, plaintiff's responsibilities included, but were not limited to, inspecting and maintaining the house and grounds of the Wenner estate, caring for defendant Wenner's dogs, setting up appointments for any work that needed to be done at the Estate, and reviewing and managing the daily staff schedule to ensure that there was always a full staff at the Estate.

FIFTY-FIFTH:        During the course of plaintiff's employment at defendants, plaintiff did not have discretion over where, when or how long he should work.

FIFTY-SIXTH:        During the course of plaintiff's employment at defendants, plaintiff needed to get approval from defendant WM prior to taking time off or using his vacation time.

8

FIFTY-SEVENTH: Plaintiff began his employment with defendants on or about March 23, 2009.

FIFTY-EIGHTH: Plaintiff was hired by defendant Wenner and Francine Cahill (hereinafter referred to as "Cahill").

FIFTY-NINTH: At all relevant times, Cahill was defendant Wenner's Personal Assistant and Property Manager.

SIXTIETH: At all relevant times, Cahill acted as plaintiff's direct supervisor.

SIXTY-FIRST: At the time plaintiff began his employment at defendants, plaintiff was told that during the busy season, Memorial Day to Labor Day, he would be required to work Six (6) days week.

SIXTY-SECOND: At the time that plaintiff began his employment at defendants, plaintiff was advised that his daily schedule was from 9:00 am to 6:00 pm.

SIXTY-THIRD: At the time plaintiff began his employment at defendants, plaintiff was advised by Cahill that during the off-season plaintiff would not be required to work on the weekends and that he would have a limited schedule.

SIXTY-FOURTH: Despite Cahill's assurances, plaintiff was required to work six (6) days a week, with long excessive hours, sometimes working from 9:00 am till anywhere from 7:00-10:00 pm, throughout the majority of his employment with defendants.

SIXTY-FIFTH: In fact, on many occasions, when defendant Wenner hosted parties and events at the Estate, plaintiff was told that he was required to stay overnight so he could manage the Estate until the events were over.

SIXTY-SIXTH:        Although, plaintiff thought that the hours and expectations of the defendants were unreasonable, plaintiff continued to work because he needed the job and did not want to lose his position.

SIXTY-SEVENTH:        Throughout almost the entire length of his employment at defendant Wenner's estate, plaintiff worked over Forty (40) hours per week.

SIXTY-EIGHTH:        Plaintiff never received overtime wages for the extra hours he worked while employed at defendants.

SIXTY-NINTH:        At all times relevant to this action, the defendant had a policy and practice of refusing to pay overtime compensation to plaintiff for his hours worked in excess of forty (40) hours per workweek.

SEVENTIETH:        In or about 2009, plaintiff worked in excess of Four Hundred (400) hours of overtime that he was not compensated for.

SEVENTY-FIRST:        In or about 2010, plaintiff worked in excess of Four Hundred and Twenty-Five (425) hours of overtime that he was not compensated for.

SEVENTY-SECOND: Cahill advised plaintiff that during the "off-season" he would be compensated for the extra hours he worked, but he was not.

SEVENTY-THIRD:    Plaintiff was advised by Cahill that the extra hours he worked would balance out during the "off-season," but there was never an off season or slow season at defendant Wenner's estate, at any time during plaintiff's employment.

SEVENTY-FOURTH:    Plaintiff was neither compensated monetarily, nor in any other manner, for the extra days and hours that he worked while employed at defendants.

SEVENTY-FIFTH:        Throughout the course of plaintiff's employment at defendants, plaintiff was never compensated for the hours he worked in excess of forty (40) hours per week.

SEVENTY-SIXTH:     On numerous occasions, plaintiff attempted to speak with defendants about these compensation issues, but the defendants ignored plaintiff and refused to compensate him for the overtime wages he earned.

SEVENTY-SEVENTH:     In fact, Cahill ignored plaintiff's concerns about his compensation and repeatedly advised plaintiff that his only concerns should be that defendant Wenner's needs were met.

SEVENTY-EIGHTH:   Notwithstanding plaintiff's demands, defendants deliberately and willfully refused to pay plaintiff his earned overtime wages.

SEVENTY-NINTH:     Upon information and belief, defendant Burak was aware that defendants deliberately refused to pay plaintiff the overtime wages he earned.

EIGHTIETH:     Upon information and belief, defendant Walsh was aware that defendants deliberately refused to pay plaintiff the overtime wages he earned.

EIGHTY-FIRST:     Upon information and belief, defendant Wenner was aware that defendants deliberately refused to pay plaintiff the overtime wages he earned.

EIGHTY-SECOND:     Defendants' willful failure and refusal to pay plaintiff his earned overtime wages is in violation of FLSA §§ 201, *et seq.*

EIGHTY-THIRD:     As a result of the foregoing, upon information and belief, plaintiff has been denied his earned overtime wages and has incurred actual damages thereby in the amount of, on or about, Seventy Thousand Five Hundred and Seventy Two ($70,572.00) Dollars, not including attorney's fees and/or statutory sanctions pursuant to FLSA §§ 201, *et seq.*

EIGHTY-FOURTH:     As a result of defendants' willful failure to compensate plaintiff for his earned overtime wages, at a rate not less than one and one-half times the regular rate of

pay for work performed in excess of forty hours in a work week, the defendants have violated the FLSA 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

EIGHTY-FIFTH:        As a result of defendants' willful failure to compensate plaintiff for his earned overtime wages, at a rate not less than plaintiff's regular rate of straight pay, for work performed in excess of forty hours in a work week, the defendants have violated the FLSA 29 U.S.C. . §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

EIGHTY-SIXTH:        As defendants willfully and deliberately failed to comply with the provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a), it is also liable to plaintiff for liquidated damages equal to One Hundred percent (100%) of the total amount of overtime wages due to plaintiff.

EIGHTY-SEVENTH:   Defendants' willful failure and refusal to pay plaintiff his earned overtime wages is in violation of NYLL §§ 190 *et seq.*

EIGHTY-EIGHTH:        As a result of the foregoing, upon information and belief, plaintiff has been denied his earned overtime wages and has incurred actual damages thereby in the amount of, on or about, Seventy Thousand Five Hundred and Seventy Two ($70,572.00) Dollars, not including attorney's fees and/or statutory sanctions pursuant to NYLL §§ 190 *et seq.*

EIGHTY-NINTH:        As a result of defendants' willful failure to compensate plaintiff for his earned overtime wages, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, the defendants have violated the NYLL §§ 190 *et seq.*

NINETIETH:   As a result of defendants' willful failure to compensate plaintiff for his earned overtime wages, at a rate not less than plaintiff's regular rate of straight pay, for work

performed in excess of forty hours in a work week, the defendants have violated the NYLL §§ 190 *et seq.*

NINETY-FIRST:        As defendants willfully and deliberately failed to comply with the provisions of the NYLL §§ 190 *et seq.* it is also liable to plaintiff for liquidated damages equal to one hundred percent (100%) of the total amount of overtime wages due to plaintiff.

NINETY-SECOND:     Additionally, pursuant to NYLL § 198(1-a), plaintiff is entitled to reasonable attorney fees for bringing this action.

NINETY-THIRD:        Notwithstanding defendants willful and deliberate refusal to compensate plaintiff for his earned overtime wages, plaintiff was wrongfully terminated as a result of his disability and age in violation of NYEL §§ 290 *et seq.*

NINETY-FOURTH:     At all times relevant to this action, plaintiff was a member of a NYEL protected class in that he was an individual with a disability, as he possesses a physical impairment which limits him in a broad range of major life activities, including but not limited to, working.

NINETY-FIFTH:        At all times relevant to this action, plaintiff was qualified for his position as an Estate Manager at defendant Wenner's Estate.

NINETY-SIXTH:        At all times relevant to this action, plaintiff satisfactorily performed the responsibilities of his position at defendants.

NINETY-SEVENTH:   Plaintiff's performance was never questioned by the defendants at any time during his employment.

NINETY-EIGHTH:      In fact, plaintiff was given a six (6 ) percent salary increase in May 2010, and a Christmas bonus in 2010, which was only weeks before he was terminated, evidencing that the defendants were satisfied with plaintiff's overall job performance.

NINETY-NINTH:       Despite plaintiff's vast responsibilities at defendants, which essentially included every aspect of defendant Wenner's Estate, plaintiff never had an issue with his performance or completing the essential functions of his employment at defendants.

ONE HUNDREDTH:   Plaintiff was dedicated to his position at defendants and regularly made himself available to assist defendants with the Estate, even outside of his regularly scheduled work day.

ONE HUNDRED FIRST:     In fact, plaintiff rarely took a lunch break or a sick day throughout his employment at defendants, and often worked very late hours, or even spent the night at defendant Wenner's Estate, to make sure that the Estate was always properly managed.

ONE HUNDRED SECOND:   On or about January 6, 2011, plaintiff left work a few hours early because he was experiencing severe back pains as a result of his disability, which was aggravated as a result of moving firewood at the Estate.

ONE HUNDRED THIRD:    Plaintiff was also feeling feverish and experiencing headaches, which were brought on by his back pains.

ONE HUNDRED FOURTH: The following day, on or about January 7, 2011, plaintiff stayed home from work and went to see a doctor about his ailments.

ONE HUNDRED FIFTH:     Plaintiff's doctor diagnosed plaintiff with an acute sinus infection and advised plaintiff to go immediately for a CAT scan, which revealed some swelling of plaintiff's brain, as well as acute sinusitis.

ONE HUNDRED SIXTH:     As a result of plaintiff's back injuries, as well as the headaches he was experiencing, plaintiff's doctor advised him to take some time off from work and to return to the doctor's office for a follow up appointment on January 11, 2011.

ONE HUNDRED SEVENTH:        On or about January 11, 2011, plaintiff returned to

the doctor's office for a follow up examination and plaintiff's doctor temporarily placed him out

of work from January 7, 2011, through up to and including January 13, 2011, as a result of his

back injury and ailments.

ONE HUNDRED EIGHTH:  Plaintiff's doctor directed plaintiff not to return to work

until January 14, 2011, as performing his daily duties at work would further aggravate plaintiff's

disability.

ONE HUNDRED NINTH:     On or about January 14, 2011, plaintiff returned to work,

despite the fact that he was still experiencing back pains, because he was afraid that he would be

terminated.

ONE HUNDRED TENTH:     Plaintiff was still experiencing severe back pains but

managed to report to work at defendants' Estate, on or about January 14, 2011, and again on or

about Monday, January 17, 2011.

ONE HUNDRED ELEVENTH:        On or about January 18, 2011, plaintiff went to

work at defendants' Estate, as scheduled, but was forced to leave work immediately because his

back pains became severe and uncontrollable.

ONE HUNDRED TWELFTH:        The strenuous work completed by plaintiff at

defendant Wenner's Estate often aggravated plaintiff's disability and resulted in severe back

pains.

ONE HUNDRED THIRTEENTH:    Upon leaving work on or about Tuesday,

January 18, 2011, plaintiff went directly to his doctor whom placed plaintiff on disability for an

undetermined amount of time, and advised plaintiff that he could not return to work until further

testing was performed.

ONE HUNDRED FOURTEENTH:     On the following morning plaintiff sent a doctor's letter to Cahill, via e-mail, to advise Cahill that his doctor placed him on disability.

ONE HUNDRED FIFTEENTH:     Cahill responded and asked plaintiff whether that meant he would be out of work until further notice.

ONE HUNDRED SIXTEENTH:     Plaintiff advised Cahill that he would not know for sure the duration of time that he would be out of work until he went to all of his doctors' appointments the following week and had some tests done.

ONE HUNDRED SEVENTEENTH: On or about January 19, 2011, defendant Burak left a message on plaintiff's home telephone, as well as his cellular phone, asking him to call her back.

ONE HUNDRED EIGHTEENTH:     Plaintiff returned defendant Burak's telephone call the following morning, on or about January 20, 2011, and in that conversation, plaintiff advised Burak that his doctor had placed him on disability for an indeterminate amount of time and that he was suffering from severe back pains, as well as headaches and sinus issues.

ONE HUNDRED NINETEENTH:     Plaintiff advised defendant Burak of his back pains and other ailments and explained that he would need some time off from work to have other examinations performed.

ONE HUNDRED TWENTIETH:     As a result of plaintiff's severe back injuries, and other ailments, plaintiff requested from defendant Burak a reasonable accommodation of time off from work to have tests performed by doctors.

ONE HUNDRED TWENTY-FIRST:  Subsequently, an MRI revealed that plaintiff was suffering from bulging discs, as well as disc and spinal diseases.

ONE HUNDRED TWENTY-SECOND:      Subsequently, plaintiff was diagnosed by his doctors with bulging discs, a degenerative disc disease, and spinal stenosis.

ONE HUNDRED TWENTY-THIRD:      Despite Burak's knowledge that plaintiff was placed on disability, and that he was suffering from severe back pain as a result of his disability and had requested the accommodation of time off from work, defendant Burak asked plaintiff if he could make himself available for Cahill if she needed him.

ONE HUNDRED TWENTY-FOURTH:      Although plaintiff was suffering from severe back pain as a result of his disability, plaintiff advised defendant Burak that he could always be reached at home in the event of an emergency at defendant Wenner's Estate.

ONE HUNDRED TWENTY-FIFTH:      On or about January 25, 2011, defendant Burak again left messages on plaintiff's home telephone, as well as plaintiff's cellular phone, asking him to call her back at the office.

ONE HUNDRED TWENTY-SIXTH:      Upon receiving defendant Burak's messages, plaintiff immediately called her at the office and was advised that she was in a meeting.

ONE HUNDRED TWENTY-SEVENTH:      Shortly after, defendant Burak called plaintiff, with defendant Walsh on the line, and advised plaintiff that he was terminated.

ONE HUNDRED TWENTY-EIGHTH:      Plaintiff asked for the reason behind his termination and defendant Walsh replied that things were just not working out, and defendant Burak advised that they were hoping to terminate plaintiff in person but he had been out of work as a result of his disability.

ONE HUNDRED TWENTY-NINTH:      To date, the defendants have not provided any other explanation for plaintiff's termination.

17

ONE HUNDRED THIRTIETH:      Prior to plaintiff's termination, defendants hired Ivan Penafiel (hereinafter referred to as "Penafiel"), an individual that is much younger than plaintiff.

ONE HUNDRED THIRTY-FIRST:  The defendants directed plaintiff to train Penafiel so that he would learn the responsibilities of an Estate manager.

ONE HUNDRED THIRTY-SECOND:      Upon information and belief, Penafiel, who is much younger than plaintiff, assumed plaintiff's position and responsibilities when plaintiff was terminated.

ONE HUNDRED THIRTY-THIRD:      Defendants' adverse employment action of terminating plaintiff gives rise to an inference of discrimination based upon Plaintiff's age, as plaintiff was replaced with a younger employee.

ONE HUNDRED THIRTY-FOURTH:      Upon information and belief, defendants Wenner, Burak, Walsh and Cahill were directly responsible for terminating plaintiff and replacing him with a younger employee.

ONE HUNDRED THIRTY-FIFTH:  It is more likely than not that a motivating factor behind defendants' termination of plaintiff was his age, as upon information and belief, plaintiff was replaced by Penafiel, an individual younger than plaintiff.

ONE HUNDRED THIRTY-SIXTH: The individually named defendants are to be held individually liable, as upon information and belief, they aided, abetted, incited, compelled, and/or coerced the discriminatory actions which were motivated by discriminatory intent based on plaintiff's age.

ONE HUNDRED THIRTY-SEVENTH:      Defendants' adverse employment action of terminating plaintiff gives rise to an inference of discrimination based upon Plaintiff's disability,

18

as plaintiff was terminated shortly after advising the defendants of his disability and accommodation request of taking time off from work.

ONE HUNDRED THIRTY-EIGHTH:        Upon information and belief, upon learning about plaintiff's disability, and plaintiff's accommodation request of taking time off from work, the defendants decided that plaintiff would not be of any use to the Estate and terminated plaintiff.

ONE HUNDRED THIRTY-NINTH:        Upon information and belief, upon learning about plaintiff's disability, as well as plaintiff's reasonable accommodation request of taking time off from work, the defendants decided that they did not want to accommodate plaintiff for his disability and terminated him.

ONE HUNDRED FORTIETH:        Upon information and belief, plaintiff was replaced by a younger and non-disabled employee that assumed plaintiff's position and responsibilities upon his termination.

ONE HUNDRED FORTY-FIRST:   Plaintiff perceived his termination to be discriminatory based on his disability because prior to being diagnosed with his disability, plaintiff's performance was never an issue raised by the defendants.

ONE HUNDRED FORTY-SECOND:        Plaintiff perceived his termination to be discriminatory based on his disability because prior to being diagnosed with his disability, plaintiff's performance was never questioned by the defendants and he was rarely spoken to about any issues regarding his employment.

ONE HUNDRED FORTY-THIRD:   In fact, the defendants gave plaintiff a five-thousand ($5,000) dollar Christmas bonus just a few weeks earlier, as well as a pay increase, and had advised plaintiff at a meeting with defendant Wenner and Cahill that he would have been the

only employee to remain employed at the Estate if it shut down for the winter, further evidencing that defendants' termination of plaintiff was not based on any legitimate business reason, and was based on his disability.

ONE HUNDRED FORTY-FOURTH:     Defendants' termination of plaintiff creates an inference of discrimination, as upon information and belief, defendants did not have any intentions of terminating plaintiff prior to their knowledge of his disability and his reasonable accommodation requests of time off from work.

ONE HUNDRED FORTY-FIFTH:   Upon information and belief, defendants' legitimate reason for terminating plaintiff is a pretext and is more likely than not discrimination against plaintiff as a result of his disability and reasonable accommodation requests of taking time off from work.

ONE HUNDRED FORTY-SIXTH:   Defendant WM discriminated against plaintiff based on his disability by, including but not limited to, terminating plaintiff without any explanation after learning of his disability.

ONE HUNDRED FORTY-SEVENTH:     Upon information and belief, Defendants Wenner, Burak, Walsh and Cahill discriminated against plaintiff based on his disability by aiding and abetting defendant WM's discriminatory termination of plaintiff without explanation, thereby violating NYEL § 290, *et seq.*

ONE HUNDRED FORTY-EIGHTH:     Plaintiff perceived defendants' denials of his accommodation requests for time off from work, as well as defendants' subsequent termination of plaintiff, to be retaliatory.

ONE HUNDRED FORTY-NINTH:  Plaintiff engaged in and had a good faith belief in his protected activity in that he requested a reasonable accommodation of taking time off from work as a result of his disability.

ONE HUNDRED FIFTIETH:        Defendants had full knowledge of plaintiff's protected activity and requests for reasonable accommodations.

ONE HUNDRED FIFTY-FIRST:     Prior to plaintiff's request for the reasonable accommodation of time off from work as a result of his disability, the defendants never spoke to plaintiff about any issues regarding his employment or performance.

ONE HUNDRED FIFTY-SECOND:        In fact, the defendants gave plaintiff a five-thousand ($5,000) dollar Christmas bonus just a few weeks earlier, as well as a pay increase, and had advised plaintiff at a meeting with defendant Wenner and Cahill that he would have been the only employee to remain employed at the Estate if it shut down for the winter, further evidencing that defendants' termination of plaintiff was not based on any legitimate business reason, but was based on his reasonable accommodation requests of time off from work.

ONE HUNDRED FIFTY-THIRD:     Due to plaintiff's participation in his good faith protected activity and reasonable accommodation of taking time off due to his disability, defendants took retaliatory and discriminatory adverse action against plaintiff.

ONE HUNDRED FIFTY-FOURTH: Upon information and belief, defendants' termination of plaintiff is more likely than not retaliation against plaintiff as a result of his disability and reasonable accommodation requests of taking time off from work.

ONE HUNDRED FIFTY-FIFTH:     Upon information and belief, defendants legitimate business reason for terminating plaintiff is a pretext for its failure to provide a reasonable

accommodation and more likely than not a retaliation against plaintiff, as plaintiff could have performed his position responsibilities with an accommodation.

ONE HUNDRED FIFTY-SIXTH:     Defendant WM retaliated against plaintiff by, including but not limited to, terminating plaintiff for requesting a reasonable accommodation, as well as failing to provide plaintiff with the reasonable accommodation of taking time off from work as a result of his disability.

ONE HUNDRED FIFTY-SEVENTH:       Upon information and belief, defendants Wenner, Burak, Walsh and Cahill retaliated against plaintiff by aiding and abetting defendant WM's discriminatory and retaliatory termination of plaintiff, as well as failing to provide a reasonable accommodation to plaintiff, thereby violating NYEL § 290, *et seq.*

ONE HUNDRED FIFTY-EIGHTH:     Defendants' discriminatory and retaliatory treatment of plaintiff action occurred under circumstances giving rise to an inference of discrimination based on plaintiff's disability and requests for a reasonable accommodation.

ONE HUNDRED FIFTY-NINTH:     As a result of defendants' discriminatory and retaliatory treatment towards plaintiff, which was motivated by discriminatory intent due to plaintiff's disability and failure to provide a reasonable accommodation, plaintiff suffered the adverse employment action of termination.

ONE HUNDRED SIXTIETH:       As a result of defendants' discriminatory and retaliatory treatment of plaintiff, plaintiff has suffered from severe emotional harm, including but not limited to, anxiety, loss of sleep and depression.

ONE HUNDRED SIXTY-FIRST:     As a result of the emotional harm incurred by defendants' discriminatory and retaliatory treatment of plaintiff, plaintiff has visited doctors and has been prescribed medication for his anxiety, loss of sleep and depression.

**WHEREFORE,** Plaintiff demands judgment against defendants as follows:

1.      For a money judgment, against defendants WM and Wenner representing actual damages for defendants' failure to pay plaintiff's earned overtime wages in an amount to be determined at trial, but not less than Seventy Thousand Five Hundred and Seventy Two ($70,572.00) Dollars, plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to FLSA §§ 201, *et seq.*;

2.      For a money judgment, against defendants WM and Wenner representing compensatory damages for defendants' failure to pay plaintiff's earned overtime wages plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to FLSA §§ 201, *et seq.*;

3.      For a money judgment, against defendants WM and Wenner representing punitive damages for defendants' failure to pay plaintiff's earned overtime wages plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to FLSA §§ 201, *et seq.*;

4.      For a money judgment, against defendants WM and Wenner representing actual damages for defendants' failure to pay plaintiff's earned overtime wages in an amount to be determined at trial, but not less than Seventy Thousand Five Hundred and Seventy Two ($70,572.00) Dollars plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to NYLL §§ 190, *et seq.*;

5.      For a money judgment, against defendants WM and Wenner representing compensatory damages for defendants' failure to pay plaintiff's earned overtime wages plus

interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to NYLL §§ 190, *et seq.*;

6.      For a money judgment, against defendants WM and Wenner representing punitive damages for defendants' failure to pay plaintiff's earned overtime wages plus interest, liquidated damages in the amount of one hundred percent (100%) of the total amount due, and attorney's fees and/or statutory sanctions pursuant to NYLL §§ 190, *et seq.*;

7.      For a money judgment against defendants representing actual damages for disability discrimination against plaintiff in violation of the NYEL;

8.      For a money judgment against defendants representing compensatory damages for disability discrimination against plaintiff in violation of the NYEL;

9.      For a money judgment against defendants representing emotional damages for disability discrimination against plaintiff in violation of the NYEL;

10.     For a money judgment against defendants representing actual damages for defendants' retaliation against plaintiff in violation of the NYEL;

11.      For a money judgment against defendants representing compensatory damages for defendants' retaliation against plaintiff in violation of the NYEL;

12.     For a money judgment against defendants representing emotional damages for defendants' retaliation against plaintiff in violation of the NYEL;

13.     For a money judgment against defendant Jane Wenner representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

14.     For a money judgment against defendant Jane Wenner representing compensatory damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

15.     For a money judgment against defendant Jane Wenner representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

16.     For a money judgment against defendant Jane Wenner representing actual damages for Wenner's retaliation against plaintiff in violation of the NYEL;

17.     For a money judgment against defendant Jane Wenner representing compensatory damages for Wenner's retaliation against plaintiff in violation of the NYEL;

18.     For a money judgment against Jane Wenner representing emotional damages for Wenner's retaliation against plaintiff in violation of the NYEL;

19.     For a money judgment against defendant Amy Burak representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

20.     For a money judgment against defendant Amy Burak representing compensatory damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

21.     For a money judgment against defendant Amy Burak representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

22.     For a money judgment against defendant Amy Burak representing actual damages for Burak's retaliation against plaintiff in violation of the NYEL;

23.     For a money judgment against defendant Amy Burak representing compensatory damages for Burak's retaliation against plaintiff in violation of the NYEL;

24.     For a money judgment against defendant Amy Burak representing emotional damages for Burak's retaliation against plaintiff in violation of the NYEL;

25.     For a money judgment against defendant Tim Walsh representing actual damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

26.     For a money judgment against defendant Tim Walsh representing compensatory damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

27.     For a money judgment against defendant Tim Walsh representing emotional damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

28.     For a money judgment against defendant Tim Walsh representing actual damages for Walsh's retaliation against plaintiff in violation of the NYEL;

29.     For a money judgment against defendant Tim Walsh representing compensatory damages for Walsh's retaliation against plaintiff in violation of the NYEL;

30.     For a money judgment against defendant Tim Walsh representing emotional damages for Walsh's retaliation against plaintiff in violation of the NYEL;

31.     For a money judgment against defendant Francine Cahill representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

32.     For a money judgment against defendant Francine Cahill representing compensatory damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

33.     For a money judgment against defendant Francine Cahill representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' disability discrimination against plaintiff in violation of the NYEL;

34.     For a money judgment against defendant Francine Cahill representing actual damages for Burak's retaliation against plaintiff in violation of the NYEL;

35.     For a money judgment against defendant Francine Cahill representing compensatory damages for Burak's retaliation against plaintiff in violation of the NYEL;

36.     For a money judgment against defendant Francine Cahill representing emotional damages for Burak's retaliation against plaintiff in violation of the NYEL;

37.     For a money judgment against defendants representing actual damages for age discrimination against plaintiff in violation of the NYEL;

38.     For a money judgment against defendants representing compensatory damages for age discrimination against plaintiff in violation of the NYEL;

39.     For a money judgment against defendants representing emotional damages for age discrimination against plaintiff in violation of the NYEL;

40.     For a money judgment against defendant Jane Wenner representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

41.     For a money judgment against defendant Jane Wenner representing compensatory damages for heraiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

42.     For a money judgment against defendant Jane Wenner representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

43.     For a money judgment against defendant Amy Burak representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

44.     For a money judgment against defendant Amy Burak representing compensatory damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

45.     For a money judgment against defendant Amy Burak representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

46.     For a money judgment against defendant Tim Walsh representing actual damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

47.     For a money judgment against defendant Tim Walsh representing compensatory damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

48.     For a money judgment against defendant Tim Walsh representing emotional damages for his aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

49.     For a money judgment against defendant Francine Cahill representing actual damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

50.     For a money judgment against defendant Francine Cahill representing compensatory damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

51.     For a money judgment against defendant Francine Cahill representing emotional damages for her aiding, abetting, inciting, compelling, and/or coercing defendants' age discrimination against plaintiff in violation of the NYEL;

52.     For reasonable attorney's fees and costs;

53.     For equitable relief; and

54.     For such further relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff herein demands a trial by jury of all issues in this action.**

Dated: Islandia, New York
       March 14, 2011

SCOTT MICHAEL MISHKIN, P.C.

By      Kyle T. Pulis, Esq. (KP0415)
        One Suffolk Square, Suite 240
        Islandia, New York 11749
        Telephone: (631) 234-1154
        Facsimile:  (631) 234-5048